WR-81,576-01
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/15/2015 12:53:19 PM
Accepted 1/15/2015 4:10:41 PM
ABEL ACOSTA
CLERK

# IN THE TEXAS COURT OF CRIMINAL APPEALS

## AUSTIN, TEXAS

RECEIVED
COURT OF CRIMINAL APPEALS
1/15/2015
ABEL ACOSTA, CLERK

|  |  |  |
|---|---|---|
| **EX PARTE GARLAND HARPER,** APPLICANT | ) ) ) ) ) ) | **Writ No.** **WR-81,576-01** |

## APPLICANT'S REQUEST FOR REMAND TO CONDUCT PROCEEDINGS CONSISTENT WITH ARTICLE 11.071

BRAD D. LEVENSON (No. 24073411)
Director, Office of Capital Writs
(Email: Brad.Levenson@ocw.texas.gov)
SAMUEL FARINA-HENRY (No. 24082979)
(Email: Sam.Farina-Henry@ocw.texas.gov)
DEREK VERHAGEN (No. 24090535)
(Email: Derek.VerHagen@ocw.texas.gov)
Post-Conviction Attorneys
Office of Capital Writs
1700 N. Congress Ave., Suite 460
Austin, Texas 78701
(512) 463-8600
(512) 463-8590 (fax)

Attorneys for Applicant

# IN THE TEXAS COURT OF CRIMINAL APPEALS

## AUSTIN, TEXAS

|  |  |  |
|---|---|---|
| **EX PARTE** **GARLAND HARPER,** **APPLICANT** | ) ) ) ) ) ) | **Writ No.** **WR-81,576-01** |

## APPLICANT'S REQUEST FOR REMAND TO CONDUCT PROCEEDINGS CONSISTENT WITH ARTICLE 11.071

Garland Bernell Harper ("Harper"), by and through his attorneys, the Office of Capital Writs ("OCW"), respectfully requests that this Court remand Harper's post-conviction proceedings to the trial court with direction to conduct a full and adequate fact-finding process consistent with Article 11.071 in order to address the numerous controverted, material issues of fact that remain unresolved in Harper's post-conviction litigation.

### A. Procedural History

On October 22, 2012, Harper filed a 233-page Initial Application for Writ of Habeas Corpus ("Application") alleging twenty-four points of error, including sixteen claims of ineffective assistance of counsel. On August 18, 2014, twenty-two months after Harper filed his Application, the State responded with a 123-page Answer. In its Answer, "[t]he State denies the factual allegations made in the instant application." (State's Answer at 1.)

On September 25, 2014, Harper and the State appeared before the 182nd District Court for a status conference. During that appearance, Harper requested a live evidentiary hearing to resolve controverted factual issues material to his

Application.    The District Court denied Harper's request for an evidentiary hearing, and directed both parties to submit proposed findings of fact and conclusions of law as the next step in the litigation of Harper's Application, entering a written order to that effect on September 30, 2014. This written Order also specifically stated that no controverted, previously unresolved factual issues material to Harper's incarceration existed in Harper's pending post-conviction litigation.

Pursuant to the District Court's September 30, 2014 Order, both sides submitted proposed findings of fact and conclusions of law on November 26, 2014. On December 11, 2014, the District Court denied Harper's Application, signing an exact copy of the State's proposed findings.

## B. The Trial Court Failed To Employ a "Fact-Finding Procedure . . . Adequate for Reaching Reasonably Correct Results"[1] to Resolve Numerous Controverted, Material Factual Issues Regarding the Legality of Harper's Confinement

A review of Harper's 233-page Application and sixty attached exhibits, and the State's 123-page Answer and four attached exhibits reveals that a number of factual disputes material to Harper's Application remain unresolved even taking into account the Ditsrict Court's Findings.   The appropriate method to resolve these controverted issues is through an evidentiary hearing pursuant to Section 9 of Article 11.071.

One glaring example of the District Court's erroneous conclusion that there were no material controverted facts concerns Claim Three of Harper's Application, in which Harper alleges that the State impermissibly presented false evidence

---

[1] *See Ex parte Davila*, 530 S.W.2d 543, 545 (Tex. Crim. App. 1975) ("[T]he proper standard . . . is whether 'the fact-finding procedure there employed was . . . adequate for reaching reasonably correct results.'") (quoting *Townsend v. Sain*, 372 U.S. 293, 316 (1963)).

through manipulated testimony regarding an extraneous murder. During the punishment phase of Harper's trial, the State introduced evidence that Harper was responsible for the murder of Teasa Jackson, which occurred more than twenty years before Harper's trial. The State presented testimony from Teasa Jackson's son, Louis Jackson, who was seven years old at the time of his mother's death.

During post-conviction litigation, Louis Jackson provided a signed, notarized affidavit which detailed his interactions prior to Harper's trial with representatives from the Harris County District Attorney. (*See* Ex. 52 [Aff. of Louis Jackson].) In support of its Answer, the State filed two affidavits, one from Assistant District Attorney Anna Emmons and one from Assistant District Attorney Denise Bradley. (State's Ex. A [Aff. of [ADA Anna Emmons]; State's Ex. B [Aff. of ADA Denise Bradley].)[2] The affidavits of the State and Louis Jackson offer clearly contradictory accounts of the conversations between Louis Jackson and the prosecutors, as detailed below:

- Louis Jackson states that the prosecutors read to him portions of the police report detailing his mother's death. (Ex. 52 at ¶5 [Aff. of Jackson].) ADA Bradley directly disputes this fact. (State's Ex. B at 2 [Aff. of ADA Bradley].)

- Louis Jackson states he was told that the prosecutors had a suspect in custody, a fact disputed by ADA Emmons. (Ex. 52 at ¶6 [Aff. of Jackson]; State's Ex. A at 3 [Aff. of ADA Emmons].)

- Louis Jackson states he was shown two photo spreads, whereas both prosecutors insist he was shown one lineup. (Ex. 52 at ¶6 [Aff. of

---

[2] In her affidavit, ADA Bradley does not provide a narrative account of her interaction with Louis Jackson. Instead, she "agree[s] and adopt[s] the statements in Anna Emmons'" affidavit, and offers conclusory denials of factual assertions raised by Harper based on the affidavit of Louis Jackson. (State's Ex. B at 2 [Aff. of ADA Bradley].)

4

Jackson]; State's Ex. A at 3 [Aff. of ADA Emmons]; State's Ex. B at 2 [Aff. of ADA Bradley].)

- Louis Jackson states that the prosecutors told him that the only suspect who had not been identified was a man Jackson saw on the porch with his mother the night of her death. After recognizing Harper in a photo spread, Jackson was told by the prosecutors that Harper had to be the man on the porch, even though Jackson had no independent recollection of Harper being the man on the porch. Rather, Jackson identified Harper in the lineup because he had seen Harper in his mother's house previously. Jackson was emotional about his mother's death, trusted the representatives of the district attorney's office, but felt that his recollection of the night of his mother's death was manipulated to fit the State's theory regarding Harper's guilt for the death of Teasa Jackson. (Ex. 52 at ¶¶10-17 [Aff. of Jackson].) ADA Bradley and ADA Emmons dispute Louis Jackson's recollection of their interaction. (State's Ex. A at 2-3 [Aff. of ADA Bradley]; State's Ex. B at 2 [Aff. of ADA Emmons].)

Whether Louis Jackson was pressured to provide false testimony at Harper's trial is material to Harper's sentence of death. Louis Jackson's testimony was instrumental in placing Harper at the scene of Teasa Jackson's apartment near the time of her death. Absent Louis Jackson's testimony, the State would have not been able to provide clear proof that Harper committed the murder of Teasa Jackson. *See Kemp v. State*, 846 S.W.2d 289, 307 (Tex. Crim. App. 1992).

Resolution of factual disputes such as these, rely on a trial courts assuming its role and responsibility as the institution tasked with assessing the credibility of habeas witnesses and determining findings of fact. *See Manzi v. State*, 88 S.W.3d 240, 255 (Tex. Crim. App. 2002) (Cochran, J., concurring) ("Trial judges who are

5

confronted with contradictory affidavits, each reciting a plausible version of the events, ought to convene an evidentiary hearing to see and hear the witnesses and then make a factual decision based on an evaluation of their credibility."). Rather than convene an evidentiary hearing to properly determine whether the State committed misconduct in this situation, the trial court simply credited the district attorneys' affidavits over that of Louis Jackson. In its proposed findings, which were adopted wholesale by the District Court, the State asserts no fewer than seven times that the affidavits of ADA Bradley and ADA Emmons are "credible." (State's Proposed Findings at ¶¶61-68.) Moreover, the State and District Court belittled the current credibility of Louis Jackson, a witness presented as credible by the State during a capital murder trial only four years prior. *Hall v. State*, 160 S.W.3d 24, 40 (Tex. Crim. App. 2004) (Price, J., concurring) ("a hearing by affidavit will generally be inadequate"), 41 ("if the convicting court conducts a hearing by affidavit, and [if] the affidavits are inadequate for us to review the convicting court's findings, we will be forced to remand to the convicting court for a live hearing, especially if the parties voice objections to the convicting court's findings").

On December 11, 2014, the trial court signed an exact copy of the State's proposed findings. Both this Court and the Supreme Court have criticized the practice of courts simply adopting wholesale the assertions and conclusions made by the State. *Jefferson v. Upton*, 560 U.S. 284, 288 (2010); *Anderson v. Bessemer City*, 470 U.S. 564, 572 (1985); *Ex parte Reed*, 271 S.W.3d 698, 729 (Tex. Crim. App. 2008); *see also Ex parte Tiede*, __ S.W.3d __, 2014 WL 6751441, *14 (Tex. Crim. App. Nov. 26, 2014) (Keller, J., dissenting) ("[T]he recommendation of the prosecutor (and that of the trial court) is not binding on this Court. The fact that the prosecutor here agrees to relief does not authorize us to ignore the law."). This Court has instructed that "the trial judge, as a neutral arbiter should . . . carefully

6

scrutinize[] the State's proposed findings to ensure that they accurately reflect the evidence in the record before adopting them verbatim." *Reed*, 271 S.W.3d at 729. A trial court's failure to do so raises concerns about the accuracy of those findings.

### C. Harper's Initial Application Should be Remanded to the Trial Court to Provide Harper His "One Full and Fair Opportunity to Present His Constitutional or Jurisdictional Claims"[3]

Harper requests that this Court remand his Application to the trial court and direct the trial court to proceed according to the mandates of Article 11.071 of the Texas Code of Criminal Procedure. Article 11.071 is "built upon the premise that a death row inmate *does* have one full and fair opportunity to present his constitutional or jurisdictional claims in accordance with the procedures of the statute." *Ex parte Kerr*, 64 S.W.3d at 419 (emphasis original); *accord Ex parte Medina*, 361 S.W.3d 633, 642 (Tex. Crim. App. 2011). The trial court's actions, as of now, have deprived Harper of that full and fair opportunity. Specifically, the trial court has failed to recognize that numerous controverted, material factual issues regarding the legality of Harper's confinement remain unresolved. *See* TEX. CODE CRIM. PRO. art. 11.071 § 8(a). Because these issues remain unresolved, this Court in not in a position to accurately assess the trial court's recommendation to deny Harper relief.

If this Court is not convinced that the trial court's fact-finding process requires a remand, the factual issues that remain unresolved show that Harper has not received a full and fair opportunity to litigate his claims. Controverted, material factual issues that remain unresolved by the trial court include:

1. Whether Juror Basey impermissibly failed to consider evidence presented during the punishment phase of Harper's trial? (Application, Claim One.)

---

[3] *Ex parte Kerr*, 64 S.W.3d 414, 419 (Tex. Crim. App. 2002).

7

2. Whether the affidavits of Assistant District Attorneys Denise Bradley and Anna Emmons are credible. (State's Exs. A, B.)

3. Whether the affidavit of Louis Jackson is credible. (Ex. 52.)

4. Whether ADA Bradley and ADA Emmons told Louis Jackson about DNA results linking Harper to an extraneous murder. (*Id.*)

5. Whether Jackson remembered seeing a man sitting on the porch with his mother on the night of her murder. (*Id.*)

6. Whether Jackson can identify the man on the porch as Harper. (*Id.*)

7. Whether the State told Jackson that Harper killed his mother and that Harper had to be the man on the porch. (*Id.*)

8. Whether the State read portions of the offense report to Jackson. (*Id.*)

9. Whether Dr. Richard Dudley's assertions regarding trial counsel's preparation and presentation of his testimony are credible. (Application, Claim Four.)

10. Whether Jesse Garza, Jennifer Flores, Monique Young and Sandra McClennon thought Harper was mentally ill. (Application, Claim Five.)

11. Whether the testimony of Garza, Flores, Young and McClennon would have corroborated Dr. Dudley's diagnosis of Harper's mental illness. (*Id.*)

12. Whether the affidavit and conclusions of Dr. Scott Bowman are reliable and credible. (Application, Claim Seven.)

13. Whether Harper was exposed to drug use by his family members. (Application, Claim Eight.)

14. Whether jurors Basey, Dowlin, Cotton, Williams, Morris, McHenry, Garcia and Hardgrave expressed opinions that they would automatically vote for a death sentence following a conviction for capital murder. (Application, Claim Ten.)

15. Whether the conclusions contained in the affidavit of David Wymore are reliable and credible. (*Id.*)

16. Whether the race-neutral reasons provided by ADA Bradley for striking prospective juror Banks are credible. (Application, Claim Eleven.)

17. Whether the race-neutral reasons provided by ADA Bradley for striking prospective juror Banks are accurate. (*Id.*)

18. Whether prospective juror Banks believed in rehabilitation and that a sentence of life without parole was preferable to a death sentence. (*Id.*)

19. Whether white jurors expressed similar opinions to prospective juror Banks. (*Id.*)

20. Whether ADA Bradley's alleged race-neutral reasons for striking prospective jurors Clark, Broadnax and Pugh are credible. (Application, Claim Thirteen.)

21. Whether ADA Bradley's alleged race-neutral reasons for striking prospective jurors Clark, Broadnax and Pugh are supported by the trial record. (*Id.*)

22. Whether there was an agreement between the State and trial counsel regarding a plea deal that rested on the diagnosis of the State's mental health expert. (Application, Claim Fourteen.)

Because these factual issues remain unresolved, Harper requests that this Court remand his Application to the trial court and instruct it to proceed according to Section 9(a) of Article 11.071 of the Texas Code of Criminal Procedure. Pursuant to that section, the trial court should be instructed to enter an order designating the material, controverted issues of fact to be resolved, and then to resolve those issues in accordance with Article 11.071. Only then will Harper be given his "one full and fair opportunity" to present his claims. *See Ex parte Kerr*, 64 S.W. 3d at 419.

9

Respectfully submitted,

DATED:      January 15, 2015      By      _____
                                          SAMUEL FARINA-HENRY

                                          _____
                                          DEREK VERHAGEN

# CERTIFICATE OF SERVICE

I, the undersigned, declare and certify that I have served the foregoing Applicant's Request for Remand to Conduct Proceedings Consistent with Article 11.071 upon:

Court of Criminal Appeals
P.O. Box 112308
Austin, Texas 78711
(Original by e-File)

Judge Jeannine Barr
182nd District Court
1201 Franklin St, 18th Floor
Houston, Texas 77002
(One Copy – by mail)

Harris County District Attorney
Attn: Josh Reiss
1201 Franklin Street, 6th Floor
Houston, Texas 77002
(One Copy – e-File)

Garland Harper
Polunsky Unit #999560
3872 FM 350 South
Livingston, Texas 77351
(One Copy – by mail)

This certification is executed on January 15, 2015, at Austin, Texas.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_____
SAMUEL FARINA-HENRY

11